| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
|---|---|
| EASTERN DISTRICT OF NEW YORK | |

MICHAEL BRYANT,

          Petitioner,

– against –                         **MEMORANDUM & ORDER**

RAYMOND COVENY,                   18-CV-6059 (ERK)

          Respondent.

KORMAN, *J.*:

## BACKGROUND

In September 2005, petitioner Michael Bryant arranged for a fourteen-year-old girl to have sex with Azmat Mustaq. Pet. 12, ECF No. 1; *see also* Pet'r's App'x A111, ECF No. 1-2. In the days following the sexual encounter, Bryant, his friend Gregory Dorismond, the young girl, and another woman concocted a plan to rob Mustaq. Pet. 13. The plan was executed on September 28, 2005. Pet. 5. Using "the ploy of a return engagement between Mustaq and [the young girl]," Mustaq and a friend were lured to a location in Brooklyn. Pet'r's App'x A111. Once the men stopped their car, Bryant and Dorismond approached. Pet'r's App'x A111. Dorismond reached in through the front driver's side window and put Mustaq in a headlock. *Id*. Meanwhile, Bryant slid into the front seat holding a gun. *Id.* A struggle ensued. During the melee, Bryant fired his weapon, hitting his co-conspirator Dorismond in the chest and killing him. *Id*. Bryant then held the gun a few inches away from Mustaq's forehead and fired, hitting Mustaq in the forehead. *Id.*; *see also* Pet. 8-9; Trial Tr. 386, ECF No. 6-3. Surprisingly, Mustaq survived the point-blank shooting, but the bullet—which remained lodged in his head—paralyzed his right leg and severely impaired his ability to speak. Pet'r's App'x A111. Bryant insisted the firearm discharged accidentally. Pet. 14.

1

At trial, the prosecution presented overwhelming evidence of Bryant's guilt: one of Bryant's accomplices, Mustaq's friend who was in the back seat of the car during the attempted robbery, and Mustaq himself all testified against Bryant. *See* Pet. 12-14, 16-17, 23-25. Bryant was convicted of attempted murder, manslaughter for killing Dorismond, attempted robbery, and possession of a weapon; he was sentenced to twenty-seven years to life in prison. Pet. 1. Bryant argues that the prosecutor took four improper actions at trial:

- The prosecutor elicited testimony that the day before the planned robbery, Bryant had prostituted a minor to Mustaq, Pet. 5, 19-21;
- "[W]ithout presenting any medical testimony, . . . the prosecutor claimed that the injuries [Mustaq] had received had incapacitated him and he should be permitted to ask some leading questions." *Id*. at 5-6, 22-26;
- The prosecutor stated that Mustaq likely would not live past age 30, *id.* at 5, 27-30; and
- The prosecutor argued that Bryant's motive in shooting Mustaq was that Mustaq had caused Bryant to accidentally shoot Dorismond, *id.* at 5, 30-33.

Nevertheless, the actions of the prosecutor are "not the basis for which [Bryant] seeks redress." *Id.* at 6. Rather, he asserts that trial counsel failed to render effective assistance by not objecting to the above. *Id*. at 6-7. He also claims that appellate counsel failed to render effective assistance by not raising a claim of ineffective assistance of trial counsel or challenging the above actions. *Id.* at 6.

On direct appeal, Bryant's appellate attorney raised other arguments, including one that prompted the Appellate Division to reduce his first-degree manslaughter conviction to second-degree manslaughter. *People v. Bryant*, 903 N.Y.S.2d 537, 538-39 (App. Div. 2010). The Court of Appeals denied leave to appeal. *People v. Bryant*, 15 N.Y.3d 802 (2010). Bryant was re-sentenced, and his sentence on the manslaughter count was reduced from seven years to one-and-a-half to four years. Pet'r's App'x A112-14. Bryant filed a pro se *coram nobis* application, alleging ineffective assistance of appellate and trial counsel, which was ultimately denied by the Appellate Division. *People v. Bryant*, 45 N.Y.S.3d 805 (App. Div. 2017). The Court of Appeals once again denied leave. *People v. Bryant*, 29 N.Y.3d 1029 (2017). Less than one week later, Bryant filed a

2

pro se motion to vacate judgment on the same four grounds identified above and already raised in his *coram nobis* petition. Pet'r's App'x AI-AV. The Kings County Supreme Court denied the motion, *id.* at A111-118, and the Appellate Division denied leave to appeal, *id.* at A131. On October 24, 2018, Bryant filed the instant petition, raising the same ineffective assistance grounds rejected twice before by the Supreme Court and the Appellate Division.

## DISCUSSION

An individual in state custody may obtain a writ of habeas corpus if the state court's "adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

> In order for a state court's decision to be an unreasonable application of [the Supreme] Court's case law, the ruling must be objectively unreasonable, not merely wrong; even clear error will not suffice. In other words, a litigant must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. This is meant to be a difficult standard to meet.

*Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (per curiam) (citations and quotation marks omitted).

In evaluating whether counsel rendered effective assistance, the familiar two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), applies. To prevail on an ineffective assistance claim, Bryant must first establish that "counsel's performance was deficient," meaning "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Second, he must demonstrate "that the deficient performance prejudiced the defense" by showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different." *Id.* at 687, 694. A failure on either prong dooms a claim of ineffective assistance. *Id.* at 697. On habeas review

under Section 2254 specifically, "the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also Gueits v. Kirkpatrick*, 612 F.3d 118, 125 (2d Cir. 2010) ("Our task is limited to assessing whether the Appellate Division unreasonably applied *Strickland*.").

Although Bryant frames his arguments primarily as the failure of appellate counsel to challenge the alleged deficiencies of trial counsel, I begin with a discussion of whether trial counsel's performance was deficient, as that informs the analysis of whether appellate counsel should have raised the argument.

### I. Trial Counsel Was Not Ineffective

#### a. Failure to Challenge Admission of Testimony Regarding Prostitution of a Minor

Bryant contends that his trial attorney should have objected to any testimony related to Bryant prostituting a minor. Specifically, he argues that "the admission of [this] immoral and high[ly] prejudicial testimony . . . , where such evidence was not material to any element of the crimes charged in the indictment, amounts to ineffective assistance" and "could not have been sound trial strategy." Pet. 19.

This evidence was necessary to provide relevant information regarding the overall plot to commit the attempted robbery. Absent an explanation of the minor's past relationship with Mustaq, it would have been unclear why or how Mustaq was lured to the site of the attempted robbery. The relevance of this evidence outweighed its prejudicial value. *See United States v. Colombo*, 869 F.2d 149, 153 (2d Cir. 1989). As Bryant admits, the most prejudicial portion of the prostitution-related testimony was the girl's age, yet her age was only mentioned a meager handful of times. Indeed, excising her age from the transcript only eliminates a few lines. *See* Trial Tr. 149, ECF No.

6-2, Trial Tr. 256, 551, ECF No. 6-3. Accordingly, Bryant's contention that the prosecutor "saturate[d] the record with reference[s] to [her] age and that [Bryant] was prostituting a 14-year-old girl" is inaccurate. Pet. 20. Her age was rarely mentioned. Such "isolated incidents . . . did not undermine the overall fairness of the trial," "even assuming that the statements were improper." *Osorio v. Conway*, 496 F. Supp. 2d 285, 302 (S.D.N.Y. 2007). In any event, the jury would have heard about the prostitution, if not the minor's age, because it was integral to understanding the overall scheme.

Moreover, the prosecutor focused on the evidence of prostitution in his summation solely for the purpose for which it was admitted, namely to "frame[] the incident that happened 24 hours later." Trial Tr. 623, ECF No. 6-4. Under all the circumstances, the use of the challenged evidence as background did not create a reasonable probability of a different outcome. Indeed, where, as here, the prosecution's case relies on cooperating witnesses and other evidence corroborates that testimony, failure to object to the prosecution's introduction of evidence of an uncharged crime and failure to request a "no adverse inference" instruction is not prejudicial. *See Vargo v. United States*, 309 F. App'x 485, 487 (2d Cir. 2009). Put differently, the overwhelming evidence makes it impossible to conclude that counsel's failure to object created a reasonable probability of a different outcome, even if the failure to object satisfied the first prong of *Strickland*. *See United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) ("[D]ecisions such as when to object and on what grounds are primarily matters of trial strategy and tactics . . . and thus are virtually unchallengeable absent exceptional grounds for doing so." (quotation marks and citations omitted)).

### b. Failure to Challenge Mustaq's Mental Competency

Bryant next complains that his trial counsel failed to "interview[] Mustaq at any time before trial[,] . . . consult[] any physicial that had treated Mustaq, or even hire[] a medical expert to interview Mustaq and assess his competency or potential inability to communicate." Pet. 22. Bryant argues that this constituted error because it led counsel to "deci[de] not to challenge Mustaq's competency or any potential impaired ability to communicate . . . based upon conversations he had with the prosecutor and his review of Mustaq's medical records," rather than demanding a hearing to assess whether Mustaq was competent to testify. *Id.* at 22-23. This error was compounded, according to Bryant, because the trial judge allowed the prosecutor to use leading questions when examining Mustaq. *See id.* at 24.

This argument is without merit. "As a general rule, the competence of a witness depends upon a capacity to observe, to remember, to communicate and to understand the nature of an oath and the duty it imposes to tell the truth." *United States v. Bloome*, 773 F. Supp. 545, 546-47 (E.D.N.Y. 1991). Throughout his testimony, Mustaq responded to questions from both the prosecutor and defense counsel. On direct examination, Mustaq confirmed that he and Bryant had struggled in the car and that Bryant fired the gun at him. *See, e.g.*, Trial Tr. 205-07, ECF No. 6-3. Significantly, Mustaq did not simply acquiesce to every question the prosecutor asked; he occasionally said no or, when asked to indicate something, demonstrated an ability to do so. *See, e.g., id.* Under such circumstances, it appears that Mustaq was able to remember and communicate about the relevant events. Moreover, on cross-examination, Mustaq admitted that, while he fought with Bryant, he never punched or swung at him as the prosecutor sought to prove; rather, he tried to push him. *Id.* at 346-47.

Thus, even if, as the prosecutor represented to the trial judge, Mustaq could not "raise his right hand to swear" and "had very little speaking capacity," Trial Tr. 161-62, ECF No. 6-3, those deficits did not implicate his mental competence—rather, they are primarily physical disabilities he suffered as a result of being shot in the head. Finally, Mustaq's medical records were admitted and the jury reviewed them, allowing the jury to draw its own conclusions about the reliability of Mustaq's testimony in light of his injuries. Trial Tr. 690, ECF No. 6-4. On this record, Bryant suffered no prejudice from his attorney's failure to demand an inquiry into Mustaq's competence to testify, and therefore cannot satisfy the second prong of *Strickland*.

c. *Failure to Object to Statements about Mustaq's Life Expectancy*

Bryant also objects to the prosecutor's opening statement at the start of trial, where he told the jury "that Mustaq's life expectancy has been considerably shortened [by the bullet in his head]" and "that he may not even survive to the age of 30 but he might." Pet. 27 (quoting Trial Tr. 157, ECF No. 6-2). Bryant argues that this testimony was ultimately not established during trial and, indeed, was contradicted by the prosecutor at sentencing. *Id.* The effect of this single, unsupported statement, which was made 10 days before the jury began its deliberation, almost certainly had an insignificant effect on the verdict. *See Osorio*, 496 F. Supp. 2d at 302 ("[T]he allegedly prejudicial statements were a minor part of a long trial and were isolated incidents that did not undermine the overall fairness of the trial.").

d. *Presentation of Bryant's Defense of Lack of Motive*

Finally, Bryant argues that "it was inexcusable for defense counsel not to have objected to the prosecutor's comments during his opening statement that the motive for [Bryant] shooting Mustaq was revenge" for making Bryant accidentally shoot Dorismond. Pet. 28. In the same vein, Bryant claims that defense counsel "never directly or indirectly advocated that the prosecution had

7

failed to prove . . . that [Bryant] intended to kill the victim." *Id* at 31 (emphasis omitted). As to Bryant's first claim, he misstates the prosecutor's assertions. The only statement indicative of Bryant's motivation was that, "[i]n response to" Dorismond "scream[ing] out, I'm hit, you shot me[] [a]nd mov[ing] back away from the car," Bryant "reache[d] in, grabb[ed] Mustaq, pull[ed] him close and then pull[ed] the trigger." Trial Tr. 152, ECF No. 6-2. This one statement does not indicate that Bryant was motivated by revenge, so no objection on that ground could have been made. *See Sanchez*, 790 F.2d at 253. Indeed, the prosecutor's opening statement hewed closely to factual events, *see* Trial Tr. 148, 152, ECF No. 6-2, and was supported by subsequent testimony, *see* Trial Tr. 206-11, 382-86, ECF No. 6-3.

Likewise, while Bryant asserts that defense counsel never challenged whether he had the requisite intent to commit the crimes charged, counsel did. In his opening, counsel stated that Bryant "did not intend to cause the death of Azmat Mustaq." Trial Tr. 161, ECF No. 6-2. During summation, defense counsel similarly urged the jury to decide "whether or not Mr. Bryant was trying to kill [Mustaq]" and repeatedly argued that Bryant lacked the intent to fire the gun and only did so because of the ongoing struggle with Mustaq. Trial Tr. 614-16, ECF No. 6-4. Thus, Bryant's complaints regarding the alleged ineffectiveness of his trial counsel are unfounded.

e. *Cumulative Effect of Counsel's Purported Deficiencies*

Even considering the cumulative effect of the foregoing allegations, Bryant's counsel's performance does not amount to ineffective assistance. Where the evidence against a defendant is overwhelming, even numerous missteps by trial counsel—including "waiver of an opening statement, brief summation, failure to raise objections, . . . failure to file certain motions, and failure to adequately investigate, prepare, and vigorously pursue a defense"—do not amount to ineffective assistance. *United States v. Nersesian*, 824 F.2d 1294, 1321-22 (2d Cir. 1987). Bryant's

8

counsel's performance hardly meets any standard of incompetence, much less the level considered in *Nersesian*. And, as the Appellate Division noted, strong evidence supported the attempted murder conviction. *See Bryant*, 903 N.Y.S.2d at 539. Accordingly, the purported failings of Bryant's counsel did not prejudice Bryant such that there is a "reasonable probability" that the outcome would have been different if these supposed gaffes had been avoided.

## II. Appellate Counsel Was Not Ineffective

Appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellant." *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). Indeed, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."). Accordingly, appointed counsel does not have "a duty to raise every 'colorable' claim suggested by a client." *Jones*, 463 U.S. at 754. Rather, "a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

The central issue Bryant contends his appellate counsel should have raised was ineffective assistance of trial counsel. As explained above, this argument would have failed. Indeed, it did fail when the Appellate Division considered it. *Bryant*, 45 N.Y.S.3d at 805. Instead, Bryant's appellate counsel chose to pursue stronger—and ultimately successful—claims, such as the failure of the trial judge to instruct the jury on a lesser-included offense. *See Bryant*, 903 N.Y.S.2d at 538-39. Because Bryant's appellate counsel exercised proper professional judgment by declining to present

a weaker argument and instead offering a successful one, Bryant received effective assistance. Thus, the Appellate Division did not unreasonably apply *Strickland* in denying Bryant's claim that his appellate counsel was ineffective for failing to challenge the alleged failures of his trial counsel. *See Gueits*, 612 F.3d at 125. Indeed, the Appellate Division's holding in this regard, while specifically directed to the "effective assistance of appellate counsel," *Bryant*, 45 N.Y.S.3d at 805, for all practical purposes rejected the claim of ineffective assistance of trial counsel as well.

## CONCLUSION

The petition for relief pursuant to 18 U.S.C. § 2254 is denied. I also decline to issue a certificate of appealability.

SO ORDERED.

*Edward R. Korman*

Brooklyn, New York
June 5, 2019

Edward R. Korman
United States District Judge